IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                                                                                Civil Action No. 1:12CV154

LANNIE F. WARNICK,
    Defendant.

## REPORT AND RECOMMENDATION/OPINION

On September 27, 2012, Plaintiff, United States of America, filed a Complaint in this matter [D.E. 1]. On November 7, 2012, the defendant, proceeding *pro se,* filed her Answer [D.E. 7]. This matter was referred to the undersigned United States Magistrate Judge on May 17, 2013 [D.E. 8]. The undersigned directed the United States to file its Motion for Summary Judgment on or before September 27, 2013, and the defendant to filed her response, if any, on or before October 25, 2013 [D.E. 2]. On September 26, 2013, the United States filed its "Motion for Summary Judgment or, in the Alternative, Judgment on the Pleadings" [D.E. 21]. On September 30, 2013, the undersigned advised Defendant, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975), of her right to file a response, and to alert her to the fact that her failure to respond could result in the entry of an order of dismissal or summary judgment against her. Defendant was advised any such response would be due within thirty (30) days of entry of the <u>Roseboro</u> Notice. As of November 25, 2013, no response has been filed.

## Statement of Undisputed Facts

In summarizing the facts, the Court resolves all disputed factual issues in the plaintiffs' favor. <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir. 1994). The following facts are undisputed.

On February 27, 1993, the defendant, a physician assistant student at Alderson-Broaddus College, applied for a scholarship award through the National Health Service Corps ("NHSC")

Scholarship Program, U.S. Public Health Service ("PHS") Department of Health and Human Services ("DHHS"). She received an award on September 30, 1993, for the 1993-1994 school year. She received continuing scholarship awards for the 1994-1995, 1995-1996, and 1996-1997, school years. The awards totaled $62,664.00 and were intended to cover the costs of tuition, fees, stipends, and other reasonable educational expenses for those school years. (Gov't. Ex. 1).

The awards made pursuant to the scholarship were made on the condition that the defendant serve in the full time clinical practice of her profession as a commissioned officer in the Regular or Reserve Corps of the PHS, or as a civilian member of the NHSC, in a health professional shortage area (designated under 42 U.S.C. 254e and 42 C.F.R. Part 5), to which she would be assigned by HHS. Defendant was required to serve one (1) year of obligated service for each year of scholarship support, or two (2) years, whichever was greater. (Gov't. Ex. 2).

On January 14, 1996, the defendant informed the NHSC program office of her dismissal from the physician assistant program on December 22, 1995. On February 22, 1996, the defendant was informed in writing that failure to return as a full-time student to a physician assistant program and/or notifying the Program Office of her intentions within one (1) year would cause her to be in breach of the NHSC Scholarship contract for failure to comply with the terms and conditions of the award.

On August 25, 1997, the defendant was notified that she was in default of the terms and conditions of the NHSC scholarship award and advised that interest would be assessed if payment in full was not made within three (3) years from the date of default. She was also provided instructions for entering into a Repayment Agreement if unable to remit the total amount due. Finally, she was advised that failure to make repayment arrangements by the due date would result in the debt being referred to the Department of Treasury for offset, consumer reporting agencies, a

private collection agency, or the U.S. Department of Justice for enforced collection. Defendant did not respond to the notification.

By letter dated January 6, 1999, the defendant was notified that her account had been referred to Payco American Corporation for collection, and that her account would be referred to the DOJ if she failed to either remit payment in full or enter into a Repayment Agreement.

In a letter dated March 9, 1999, the defendant informed the Program Office of her intention to resolve her delinquency status through service or repayment as a nurse. On April 6, 1999, the defendant advised she would not be able to resolve her debt obligation through service. She was then advised to enter into a Repayment Agreement in order to being repaying the debt. Defendant signed a Repayment Agreement dated April 30, 1999, in which she agreed to make monthly payments of $25.00 beginning May 10, 1999. The Agreement was approved on May 10, 1999.

The defendant was advised on March 14, and April 15, 2003, that her debt was delinquent and failure to bring the account current within thirty (30) days would result in demand for the entire amount of the debt. The defendant was advised on November 8, 2006, that her debt was delinquent and that failure to pay in full or resume monthly payments would result in her account being referred to the Department of the Treasury for offset, consumer reporting agencies, and the DOJ for enforced collection. The defendant did not respond.

On August 14, 2007, the defendant was given final notice regarding her debt. She was advised that failure to make full or partial payment within sixty (60) days would result in her account being referred to the Department of Treasure for offset, consumer reporting agencies, and the DOJ for enforced collection. The defendant did not respond.

On January 9, 2008, the defendant was again notified that she had sixty (60) days in which to resolve her delinquent debt.

On January 30, 2008, the defendant requested a partial waiver of her debt obligation. In letters dated February 7, 2008, and February 12, 2008, she was provided a list of conditions that must be met for waiving the obligation. She complied with the request.

On August 19, 2009 the defendant was advised that, based on the financial documentation she provided and her inability to satisfy her obligation through service, the interest on her debt would be waived. She was provided with an updated account of her remaining debt obligation and instructed to contact the Division of Financial Operations within thirty (30) days to enter into a Repayment Agreement.

On March 28, 2012, the defendant was informed by the Department of the Treasury that $943.00 had been applied to her debt. (Def. Attachment 7).

On July 9, 2012, the defendant was notified her debt was $72,365.47, and was accruing interest at approximately $13.68 per day. She was advised she had thirty (30) days in which to repay the debt or establish a Repayment Agreement; if she failed to do either, her case would immediately be referred to the Department of Treasury, consumer reporting agencies, and the OIG for exclusion from participation in the Medicare/Medicaid Programs. (Def. Attachment 4). Defendant was informed that same date of the credits and payments applied to her account, totaling $6,835.00.

On August 14, 2012, the defendant remitted a check to DHHS in the amount of $100.00 (Def. Attachment 6).

On September 17, 2012, the defendant was advised that her payments had not been consistent or in the amount agreed upon in the Repayment Agreement signed in April 1999. She had not submitted updated financials or signed a new Repayment Agreement. Therefore she remained liable for repayment of the debt, plus interest, minus the payments made. At that time the debt was referred to the Department of Justice for enforced collection. (Gov't Ex. 1).

On September 19, 2012, the defendant was advised her case had been referred to the United States Attorney's Office to initiate legal action and obtain a judgment for collection of the debt. She was advised that in order to avoid further legal action, she should pay the debt (now totaling $84,136.90) in full. (Def. Attachment 5).

The United States filed its Complaint on September 27, 2012 [D.E. 1]. The defendant was served on October 11, 2013 [D.E. 4].

On October 30, 2012, the defendant advised DHHS that she had "no idea" how she could pay off her debt. She explained that she had had six surgeries and two chronic illnesses. She also explained that she was now back working but living paycheck to paycheck, and also owed student loans. She suggested that, once she finished paying off her student loans, she would begin paying off her scholarship debt in the monthly amount she was paying her student loans. (Def. Attachment 3).

That same date, the defendant advised United States Attorney for the Northern District of West Virginia William J. Ihlenfeld, that she had been advised the principal owed on her debt was $36,300.04, plus interest of $36,065.43, accruing at the rate of $13.68 per day. She acknowledged that the request from DHHS was for payment in full, and this amount was impossible for her to pay. She advised that she could make payments of $302.50 every two weeks for the next five years, which would pay off the principal, if the interest was forgiven. (Def. Attachment 2).

United States District Judge Irene M. Keeley referred this matter to the undersigned on May 17, 2013 [D.E. 8].

The undersigned directed the United States to file its Motion for Summary Judgment on or before September 27, 2013, and the defendant to filed her response, if any, on or before October 25, 2013 [D.E. 2]. On September 26, 2013, the United States filed its "Motion for Summary Judgment

or, in the Alternative, Judgment on the Pleadings" [D.E. 21]. On September 30, 2013, the undersigned advised Defendant, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), of her right to file a response, and to alert her to the fact that her failure to respond could result in the entry of an order of summary judgment against her. Defendant was advised any such response would be due within thirty (30) days of entry of the Roseboro Notice. As of November 25, 2013, no response has been filed.

There is no dispute that Defendant has not repaid the debt and interest has been assessed. As of the date the United States filed its Motion, September 26, 2014, Defendant is indebted to the United States in the principal amount of $62,664.00, plus interest in the amount of $21,472.90, computed on the principal at the rate of 13.75% per annum as of September 17, 2012, plus interest thereafter on the principal at the rate of 13.75% per annum until the date of judgment, and costs.

The United States made demand of Defendant for payment of the sum due, but the amount due remains unpaid.

As of the date the Motion for Summary Judgment was filed, the United States claims the amount due from the defendant is: (1) the sum of $84,136.09; (2) pre-judgment interest at the rate of 13.75% on the principal amount ($62,664.00) that has accrued and will continue to accrue from and after September 17, 2012, through the date of judgment; (3) post-judgment interest pursuant to 28 U.S.C. section 1961(a), at the legal rate until paid in full; (4) all costs incurred by the United States; and (5) such further relief as the Court deems appropriate

### B. STANDARDS OF LAW

#### Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986). In considering a motion for summary judgment, the court is required to draw reasonable inferences from the facts in a light most favorable to the nonmoving party. Id. at 255.

The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

### C. ANALYSIS

A review of the pleadings and documents in this matter shows there is no genuine issue as to any material fact in this case. Defendant's Answer, although providing a credible explanation for her failure to repay her debt, through either service or monetary payment, nevertheless acknowledges and admits she owes the debt alleged in the Complaint. The undersigned therefore finds the United States' Motion for Summary Judgment should be granted.

### RECOMMENDATION

For all the above reasons, the undersigned United States Magistrate Judge respectfully

**RECOMMENDS** the United States' Motion for Summary Judgment [Docket Entry 21] be **GRANTED**. The undersigned further **RECOMMENDS** Judgment be entered in favor of the United States and against the defendant as follows: (1) the sum of $84,136.09; (2) pre-judgment interest at the rate of 13.75% on the principal amount ($62,664.00) that has accrued and will continue to accrue from and after September 17, 2012, through the date of judgment; (3) post-judgment interest pursuant to 28 U.S.C. section 1961(a), at the legal rate until paid in full; (4) all costs incurred by the United States; and (5) such further relief as the Court deems appropriate.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation by Certified United States Mail to Defendant, *pro se*, and to counsel of record by electronic means.

Respectfully submitted this 3rd day of December , 2013.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE